# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ANGEL A. VAZQUEZ RIVERA** | |
| Plaintiff | |
| vs. | Civil No 11- |
| **UNITED STATES OF AMERICA**; represented by the President of the United States of America, Mr. Barack Obama; **UNITED STATES ARMY** represented by its Secretary Mr. John McHugh; **DEPARTMENT OF JUSTICE** represented by the Attorney General Mr. Eric Holder; **COL. JOHN D. CUSHMAN** as Commander U.S. Army Garrison Fort Buchanan; **GUNNARD G.F. PEDERSEN** as Deputy to the Garrison Commander; **Ms. MAGDA FIGUEROA** as Executive Officer, U.S. Army Garrison Fort Buchanan; **JOSE L. (Joe) ORTEGA** as Acting Director of the Directorate of Planning, Training, Mobilization and Security ("DPTMS") for Fort Buchanan, Puerto Rico, **Mrs. NANNETTE LOPEZ SILVA** and the conjugal partnership constituted amongst her and José L. Ortega; **JOHN DOE AND JANE DOE**, each of the above, individually and in their personal and official capacity. | RE: Damages, injunctive and equitable relief Age Discrimination in Employment (ADEA), American Disabilities Act (ADA), Retaliation and Hostile Work Environment

PLAINTIFF REQUESTS TRIAL BY JURY |
| Defendants | |

1

## COMPLAINT

TO THE HONORABLE COURT:

APPEARS NOW, Plaintiff Angel A. Vázquez Rivera through the undersigned attorney and respectfully STATES, ALLEGES, and PRAYS:

### I. NATURE OF THE ACTION

1. This is an action for damages, injunctive and equitable relief brought by Angel A. Vázquez Rivera for willful violation of his civil and employment rights by his employer due to age discrimination, disability discrimination, retaliation, harassment and hostile work environment.

### II. JURISDICTIONAL BASIS

2.      Court has jurisdiction over the case at hand pursuant to the American Age Discrimination in Employment Act **(29 U.S.C. § 621 et seq.);** American with Disabilities Act **(42 U.S.C. §12101 et seq.**) and under the same titles under herein above mentioned, discrimination for **retaliation;** Puerto Rico's Antidiscrimination Law, law 100 of May 15, 1975 (29 LPRA §146 et seq.), Article 1802 of the Puerto Rico Civil Code, 31 LPRA, Sec. 5141; the Puerto Rico Disability Anti Discrimination Act, Law 44 of July 12, 1985 (1 L.P.R.A. sec. 501 et seq.); the Constitution of the United States and the Constitution of the Commonwealth of Puerto Rico.

3.      At all times pertinent to this Complaint, Defendants is an employer engaged in an industry affecting the interstate commerce within the meaning of ADEA.

2

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Pursuant to the applicable statues, Plaintiffs filed a complaint before the Equal Employment Opportunity Commission (EEOC) and according to said applicable statues the agency, issued a notice on 3 February 2011, received on 5 February 2011 by plaintiff, where a 90 day deadline was granted to file a complaint of Court.

### IV. PARTIES

### PLAINTIFF

5.     Plaintiff **Angel A. Vázquez Rivera**, is 46 years old, resident and domiciled in The Commonwealth of Puerto Rico and is a legal citizen of the United States of America with physical address Calle Mirlo #951 Segunda Sección Country Club, San Juan, P.R. 00924. He is currently working as "Operations Specialist" for the Directorate of Planning, Training, Mobilization and Security ("DPTMS") in U.S. Army Garrison Fort Buchanan.

### DEFENDANTS

6.     Defendant the **United States of America** (**herein after "USA"**) is a political entity created by means of the Constitution of the United States of America and through which receives the authority to sue and be sued in Federal Court, by itself or through one or several of its subordinate agencies or entities created under it by Congress. USA is herein represented by the President of the United States of America, Mr. Barack Obama.

3

7.    Co-Defendant **Unites States Army (herein after "Army")** is the main branch of the United States Armed Forces responsible for land-based military operations. The Army is a military service within the Department of the Army, one of the three military departments of the Department of Defense and which operates a military garrison known as Fort Buchanan in Guaynabo, Puerto Rico 00934. The Army herein is represented by the Secretary of the Army, Mr. John McHugh.  The Army in fiscal year 2009 reported a strength of 549,015 soldiers; the Army National Guard (ARNG) reported 358,391 and the United States Army Reserve (USAR) reported 205,297 putting the combined component strength total at 1,112,703 soldiers and more than 1,000 civilian employees for the last 52 weeks prior to the filing of this Complaint.

8.    The Co-Defendant, the **United States Department of Justice** (**herein after "DOJ"**), is the United States federal executive department responsible for the enforcement of the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans. The Department Of Justice has the authority to sue and be sued in Federal Court and herein represented by the Attorney General Mr. Eric

Holder. Nevertheless, DOJ is brought into this case as a statutory representative of the USA, only.

9. Co-Defendant, **John D. Cushman (herein after "Cushman")** is the current Commander of US Army Garrison Fort Buchanan where he is responsible for the actions of his subordinates like the following Co-Defendants, in the performance of their duties. Military law recognizes no principal which is more firmly fixed than the rule that a military superior is responsible for the proper performance by his subordinates of their duties. The military commander has complete and overall responsibility for all activities within his unit.

10. Co-Defendant, **Gunnar G.F. Pedersen (herein after "Pedersen")** is the current Deputy to the Garrison Commander and senior civilian employee with direct supervisory responsibility over the Directors of the US Army Garrison and as such he has the same duties and responsibilities as the Garrison Commander.

11. Co-Defendant, **Magda Figueroa (herein after "Figueroa")** is the current the Executive Officer in the Command Group of the US Army Garrison Fort Buchanan since 2008. The Command Executive Officer serves as the primary advisor and consultant to the Commander, Deputy Commander/Chief of Staff, Senior Enlisted Advisor and Command Group on various executive matters pertaining to all components of the command and provides continuity on command policies and procedures. The Executive

5

Officer provides technical and administrative guidance to the directors and special staff and ensures coordination of the work of the staff. Administers the command message system and keeps abreast of Department of Defense (DoD), Department of the Army (DA) and USMEPCOM policies, procedures, regulations, and directives in the areas of personnel, finance, operations, and logistics.

12.   Co-Defendant, **Jose L. (Joe) Ortega (herein after "Ortega")** is the Acting Director of the Directorate of Planning, Training, Mobilization and Security ("DPTMS") and Plaintiff's Supervisor in Fort Buchanan, Puerto Rico who is currently married Defendant **Mrs. Nannette Lopez Silva** and together they constitute a conjugal partnership. Co Defendant Ortega is sued in his official capacity as well as in his personal capacity including his wife and their conjugal partnership.

13.   The Director of the Directorate of Planning, Training, Mobilization and Security ("DPTMS") is charged in developing and executing all plans essential for the accomplishment of operations, mobilization and contingency planning for rapid reaction to foreign, domestic and natural disasters; and serving as program manager for military training, and mobilization. Administers the Army military personnel testing program; manages training ammunition; and provides training aid support to all active and reserve component personnel. Develops and executes all contingency plans necessary for rapid reaction to domestic emergencies, acts of terrorism, and

6

natural disasters associated with earthquakes and weather phenomena. Coordinates installation plans with major tenant units, Federal Emergency Management Agency, and state and local emergency management agencies. Perform other duties as assigned.

14.    **John and Jane Doe** are fictitious names given to any natural or legal entities who may be responsible or may be liable under this matter.  Plaintiff will seek leave of the Court to amend this Complaint to include the true names and capacities of these defendants once the same have been ascertained

15.    Reference hereinafter to the "defendants" is intended to include each of those individuals and entities under which defendants have done or currently have relationships of one kind or another.

16.    All named Defendants are sued in their official and personal capacity.

17.    Plaintiff reserves the right to amend this Complaint to include any additional individuals, or entities under which any of the defendants have a relationship of one kind or another, and to include other entities and/or persons, in addition to the named defendants, in the event of the discovery of additional corporations and/or persons sharing responsibility with the defendants for the acts complained of herein.

## RELEVANT FACTS

18.  Angel A. Vázquez Rivera, hereinafter "Plaintiff" is currently a 46 years old civilian employee for the U.S. Army, with a job site located in Fort Buchanan, Puerto Rico.

19.  Plaintiff was already in the protected class by ADEA when the adverse actions taken upon him and the hostile work environment began.

20.  Plaintiff started working for Defendants on 11 July 1999.  Therefore, Plaintiff has over 22 years of civil service concurrent with 29 years in the military.

21.  Over the years, Plaintiff has had several recognitions and medals for his good standards and well performance.

22.  For the past 10 years, Plaintiff has worked in the Directorate of Planning, Training, Mobilization and Security, here on ("DPTMS") as "Operations Specialist".

23.  Plaintiff's job duties as Operations Specialist include to act as subject matter expert and central point of contact for all on-going operations in the Installation and is called upon to provide updates, information exchanges, and status of operations at all times. Monitors the action of personnel working in the Installation Operations Center (IOC). Also he is responsible for the operations of the IOC including the direction of assigned or attached personnel, manages daily IOC actions to include development of Operations Plans and Orders for daily IOC operations, develop controls and evaluates

the effectiveness of the IOC operations to include monitoring of all operations. Assures that appropriate and timely actions are taken in all functional areas of the IOC operations to ensure safety, security and operational reliability, reviews all documents developed in the IOC for compliance with current guidelines, regulation and procedures as applicable, serves as Shift Leader during contingency, mobilization or emergency operations; Train and assists IOC assigned or attached staff/ personnel in Incident Command System to ensure proficiency; Assist in the research and preparation of reports pertaining to installation contingency and operational plans in response to inquiries from higher headquarters and supported units, performs periodic surveys of emergency preparedness activities to evaluate both accuracy and content while comparing them to other activities throughout the command, reviews and evaluates operating procedures and practices, actions taken by operating, service, and support organizations; establish the Mobilization Operations Center (MOC) during mobilization operations or exercises and serve as Battle Captain during mobilization if required; among many others.

24. Since October 29 2009, Plaintiff has been subject to discriminatory and adverse actions from Co-Defendant José L. Ortega, actual Director of the DPTMS and his immediate supervisor. On the same token, Col. John D. Cushman, Gunnard G.F. Pedersen, Ms. Magda Figueroa and Mrs. Nannette Lopez Silva, who have supervisory role over Co-Defendant Ortega and

Plaintiff, have first hand knowledge of the events that constitute the discriminatory acts and failed to stop the acts or take corrective action. In the alternative, they cooperated and or aided and abetted Co-Defendant Ortega.

25. Furthermore, Col. John D. Cushman, Gunnard G.F. Pedersen, Ms. Magda Figueroa and Mrs. Nannette Lopez Silva are agents of Co-Defendants USA and the US Army and as such implement the policies and practices of the named Co-Defendants for which they are liable to the Plaintiff for their discriminatory acts.

26. The discriminatory scheme which started in 2009 and continue until this day, include, age, health and/or disability discrimination, retaliation, harassment and hostile work environment.

27. Co-Defendant Ortega constantly harasses and discriminates Plaintiff through words and actions. In fact, Co-Defendant Ortega targeted Plaintiff harassing him to leave, resign, or retire due to his age. During the continuous harassment, undue pressure, humiliation and discriminatory comments and actions, the age and mental condition.

28. This harassment had effect of unreasonably interfering with Plaintiff's work performance and created an objectively intimidating, hostile and offensive work environment.

29. As a result of these actions, Plaintiff suffered a nervous breakdown and had to receive medical treatment from psychiatric and psychology care providers.

30. These incidents were sufficiently continuous and concerted to be considered pervasive, and they were subjected to the hostility because of Plaintiff's age and health/or disability.

31. During numerous occasions Plaintiff has had to ask Co-Defendant Ortega, even in front of supervisors, to refrain from making comments against his age, his disability, work, stop questioning his performance and discriminatory actions.

32. Plaintiff has complained on multiple occasions of Co-Defendant Ortega's conduct before Co-Defendants and this has aggravated Ortega's adverse actions against Plaintiff. As a matter of fact, these complaints have not resulted in any action that would stop the discriminatory and retaliatory events.

33. Co-Defendant Ortega's discriminatory and retaliatory actions are the result for Plaintiff denouncing the way that he performed and acted when he worked as Operations Specialist and the way he was appointed by Co-Defendant Magda Figueroa to be the Battle Captain during the CAPECO crisis.

34. Co-Defendant Ortega has on several occasions called Plaintiff to settle "their differences" either at the office or to take them outside, in clear reference to fighting. This type of conduct is unacceptable and offensive.

35. There after Co-Defendant Ortega intentionally and maliciously attempted to remove Plaintiff from his duties at the IOC by openly criticizing DPTMS management for their decisions and performance and intentionally creating the conditions and appearance to have Command Group believe that DPTMS was in a chaotic state that needed to be fixed, and that the Plaintiff was the responsible employee for this situation.

36. As consequence of these series of discriminatory and retaliatory events between Plaintiff and Co-Defendant Ortega Plaintiff had to seek medical attention.

37. As a matter of fact, Co-Defendant Ortega relied on this incident to try to remove Plaintiff from his duties at the IOC for the second time, as a retaliatory action.

38. Co-Defendant Ortega, used the Army's email service to state that Plaintiff was not apt for work due to his psychological condition which was caused by Co-Defendants overt action to discriminate against Plaintiff based on age and disability. Furthermore, Ortega stated that Plaintiff should be referred for additional mental assistance or be relocated to a different directorate until he could be able to perform.

39. Co-Defendant Ortega created a hostile environment for Plaintiff and when Plaintiff reacted, Mr. Ortega then took matters to supervisors alleging that he had a justified reason to believe that Plaintiff had a "medical condition" for which he needed assistance in clear reference as to imply that

Plaintiff had a mental illness, all as part of his scheme to discriminate for age and disability.

40. Plaintiff was requested to provide medical information regarding his ability to work and to perform assigned tasks. This based on the "appearance" of having a "medical condition".

41. This "appearance of having medical condition" is the result of Plaintiff reaction to Co-Defendant Ortega's constant discriminatory and retaliatory scheme, harassment, hostility, humiliation and embarrassment and for seeking medical assistance after many incidents with Co-Defendant Ortega.

42. Afterwards, Co-Defendant Ortega removed Plaintiff from his duties at the IOC ordering him to report to building 607 and arbitrarily changed his compress work schedule that Plaintiff had agreed upon since 2005. This event alone shows the age discrimination and disability animus by changing job assignment to Plaintiff for no apparent or justifiable reason.

43. As a matter of fact, Plaintiff was replaced in his prior job assignment by a younger civilian employee.

44. These arbitrary actions were based on discriminatory animus for age and disability which is illegal because in this case it is so frequent or severe that it created a hostile or offensive work environment and also it results in an adverse employment decision such as a change in job assignment.

45. On January 13, 2010 during a telephone conference between Co-defendant Ortega, Mr. Figueroa and Plaintiff, in reference to Plaintiff's new

work schedule and lunchtime Co-defendant Ortega stated "as long as I am DPTMS, on my tenure, you will not have compressed work schedule".  This reflects a clear discriminatory and arbitrary action against Plaintiff.

46.  On May 12, 2010 Plaintiff had to contact an EEO Counselor and complain about Co-Defendant Ortega's actions.

47.  On May 25, 2010 Co-Defendant Ortega was repeatedly asking Plaintiff on an incisive tone of voice to read out loud several times what said an e-mail sent by Co-Defendant the day before. During this portion of the conversation, Co-Defendant Ortega said, in his accustomed tone of voice when he does not get the answers the way he expects them "I need a specific answer, and you should answer specifically what I had ask for." Then he left with Mr. Figueroa making the following statement, "that's why I called you to be present to avoid the possibility of being accused of harassing him".

48. Plaintiff felt humiliated and disrespected since there were other coworkers present and Co-Defendant Ortega clearly implied that Plaintiff accuses him of harassment unjustifiably.

49. On numerous occasions, Plaintiff and several other co-workers have told Co-Defendant Cushman that the environment in DPTMS is getting to the point of no tolerance and that Command Group is not taking any proactive action apparently to avoid a confrontation with Co-Defendant Ortega.

50. Co-Defendant Cushman has stated that he does not believe in firing people, that he is there to coach and to mentor his Directors.  He also stated that people should make their personal decisions to elect their workplace and if their workplace is not what they expect it to be, then people should think about relocating to another place or retiring. As a matter of fact, this comment from Co-Defendant Cushman is an age related theme which referred to Plaintiff.

51. Furthermore, Plaintiff who is a qualified individual which is believed to have a physical or mental impairment that is not transitory is being treated less favorably to other employees.

52.

53. The situation still persists at USAG Command Group, Fort Buchanan and no further action has been taken to resolve the issue.

54. Plaintiff's workplace is permeated with discriminatory intimidation, ridicule, and insult that are sufficiently pervasive to alter the conditions of Plaintiff's employment or in the alternative; they create a constructive termination of employment.

55.   Defendants made offensive remarks about Plaintiff purported disability which it was so frequent and severe that it created a hostile or offensive work environment that resulted in an adverse employment decision thru the job reassignment.

56.

57. These actions taken upon Plaintiff have caused serious emotional and mental anguish, not only to him but also to his family.

## PLEADINGS CONCERNING ALL CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### (AGE DISCRIMINATION)

58.   Plaintiff refers to and incorporates by reference the allegations in paragraph 1 through 57 of this Complaint, as though set here in full.

59.   Defendants' actions against Plaintiff are based on age discriminatory factors.

60.   The unequivocal evidence to such willful and deliberate discriminatory practice is the fact that Plaintiff is being forced to retire and/or resign due to his age.

### SECOND CAUSE OF ACTION
### (DISABILITY DISCRIMINATION)

61.   Plaintiff refers to and incorporates by reference the allegations in paragraph 1 to 60 of this complaint as though set here in full.

62.   In the alternative, Defendant's adverse action taken upon Plaintiff is based by the discriminatory factors such as being regarded to as to having an impairment.

63.   This type of action is prohibited under **federal** law because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

16

## THIRD CAUSE OF ACTION
## (RETALIATION)

64.    Plaintiff refers to and incorporates by reference the allegations in paragraph 1 through 63 of this Complaint, as though set here in full.

65.    In the alternative, Defendants' decision to take adverse action against Plaintiff is based on retaliation factors for filing a complaint before the Employment Equal Opportunity Officer (EEO), US Army Garrison Fort Buchanan requesting a formal investigation for Abuse of Power, Hostile Working Conditions (environment), Pre-selection, Retaliation, Favoritism, Harassment, Unfair Labor Practices, Reprisal and Discrimination against Co-Defendant Ortega.

66.    And/Or, Co-Defendant Ortega's present actions are the result for Plaintiff denouncing the way that he performed and acted when he worked as Operations Specialist and the way he was appointed by Ms. Magda Figueroa (US Army Garrison Executive Officer) to be the Battle Captain during the CAPECO crisis.

## FOURTH CAUSE OF ACTION
## (Law 100 of June 30, 1959 (29 LPRA ss 150))

67.    Plaintiff refers to and incorporates by reference the allegations in paragraph 1 through 66 of this Complaint, as though set here in full.

68.    Defendants' decision to take adverse action against Plaintiff is based on age and retaliation factors such as filing a complaint before the Employment Equal Opportunity Officer (EEO), US Army Garrison Fort Buchanan

requesting a formal investigation for Abuse of Power, Hostile Working Conditions (environment), Pre-selection, Retaliation, Favoritism, Harassment, Unfair Labor Practices, Reprisal and Discrimination against Co-Defendant Ortega and or the result for Plaintiff denouncing the way that he performed and acted when he worked as Operations Specialist and the way he was appointed by Command Group through Ms. Magda Figueroa (US Army Garrison Executive Officer) to be the Battle Captain during the CAPECO crisis.

### FIFTH CAUSE OF ACTION
### (PUERTO RICO DISABILITY ANTI-DISCRIMINATION ACT)
### (Law 44 of July 12, 1985 1 L.P.R.A. sec. 501 et seq.)

69.   Plaintiff refers to and incorporates by reference the allegations in paragraph 1 through 68 of this Complaint, as though set here in full.

70.   On the alternative, Defendant's decision to reprimand and take adverse action on Plaintiff is based by the discriminatory factors such as being regarded to as to having impairment.

71.   This type of action is prohibited under this **state** law because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

### SIXTH CAUSE OF ACTION
### ARTICLE 1802, 31 LPRA, SEC. 5141

72.   Plaintiff refers to and incorporates by reference the allegations in paragraph 1 to 71 of this complaint as though set here in full.

73.   Pursuant to the Civil Code of Puerto Rico, 31 LPRA Sec. 5141 a direct action to recover actual damages may be brought in the Commonwealth of

Puerto Rico against a natural or juridical person who by act or omission cause damages to another through fault or negligence.

## SEVENTH CAUSE OF ACTION
### (Under the United States Constitution)

74.   Plaintiff refers to and incorporates by reference the allegations in paragraph 1 to 73 of this complaint as though set here in full.

## EIGHTH CAUSE OF ACTION
### (Under the Constitution of the Commonwealth Puerto Rico)

75.   Plaintiff refers to and incorporates by reference the allegations in paragraph 1 to 74 of this complaint as though set here in full.

### OWED COMPENSATION AND DAMAGES

### AGE DISCRIMINATION IN EMPLOYMENT (ADEA)

76.   Under ADEA the following remedies are available and damages may be awarded as follows:

- **Back pay**: consists of wages, salary and fringe benefits employee would have earned during the period of discrimination which is estimated at no less than $50,000.00.

- **Attorney's Fees**: may be awarded to the prevailing party.

- **Liquidated damages**: are given where a willful violation occurs in an amount not less than five hundred thousand dollars ($500,000.00).

- **Front pay**: may be awarded in certain cases. It is designed to restore victims to their "rightful place". It compensates the victim for anticipated future losses in an amount not less than five hundred thousand dollars ($500,000.00).

- **Injunctive relief**: Such relief might include reinstatement and an order to prevent future discrimination.

- **Punitive Damages**: are available in claims under ADEA when a willful violations of this law occurs in an amount not less than five hundred thousand dollars ($500,000.00).

- **Compensatory Damages** are allowed for future loss, emotional distress, pain & suffering, inconvenience, mental anguish & loss of enjoyment of life in an amount not less than five hundred thousand dollars ($500,000.00).

- The compensatory and punitive damages obtained under the ADEA are not subject to statutory caps.

### AMERICAN DISABILITIES ACT

77.   Under ADA the following remedies are available and damages may be awarded as follows:

- **Back pay**: consists of wages, salary and fringe benefits the employee would have earned during the period of discrimination from the date of termination (or failure to promote), to the date of trial.

- **Attorney's Fees**: may be awarded to the prevailing party.

- **Compensatory Damages** are allowed for future loss, emotional distress, pain & suffering, inconvenience, mental anguish & loss of enjoyment of life. Caps are placed on compensatory damages

according to the size of the employer. The limits on damages are as follows:

Up to 100 employees: $50,000
101-200 employees: $100,000
201-500 employees: $200,000
500+ employees: $300,000

- **Injunctive relief**: Such relief might include reinstatement and an order to prevent future discrimination.
- **Punitive Damages** are also available in claims under the Americans with Disabilities Act of 1990.

## RETALIATION

78.   Proven retaliation frequently constitutes a practice undertaken "with malice or with reckless indifference to the federally protected rights of an aggrieved individual."   Therefore, punitive damages often will be appropriate in retaliation claims brought under any of the statutes enforced by the EEOC.

79.   In retaliation claims, damages may include:

- **Reinstatement**
- **Back pay**, or the wages you not earned because of the retaliation
- Double the amount of any back pay award ("**liquidated damages**")
- **Front pay** not less than $500,000.00.

- **Punitive Damages**: are available in claims under ADEA when a willful violations of this law occurs in an amount not less than five hundred thousand dollars ($500,000.00).

- **Compensatory Damages** are allowed for future loss, emotional distress, pain & suffering, inconvenience, mental anguish & loss of enjoyment of life in an amount not less than five hundred thousand dollars ($500,000.00).

- **Punitive damages,** not less than $500,000.00.

- Compensatory and punitive damages therefore are available for retaliation claims brought under the ADEA.

## PUERTO RICO LAW 100

80.   Under Puerto Rico State Law 100 an injured individual is entitled to:

- **Double Damages** in an amount no less than $500,000.00.

- **Reinstatement** with the same seniority status that the employee would have had, but for the discrimination

- **Back pay**: consists of wages, salary and fringe benefits the employee would have earned during the period of discrimination from the date of termination.

- **Front pay**: may be awarded in certain cases. It is available when reinstallation is not possible, not less than $500,000.00.

- **Compensatory Damages:** are allowed for future loss, emotional distress, pain & suffering, inconvenience, mental anguish & loss of enjoyment of life.

## PUERTO RICO LAW 44

81.  Under Puerto Rico State Law 44, an injured individual is entitled to the same remedies as in Puerto Rico State Law 100, These include:

- **Double Damages** not less than $500,000.00.

- **Reinstatement** with the same seniority status that the employee would have had, but for the discrimination

- **Back pay**: consists of wages, salary and fringe benefits the employee would have earned during the period of discrimination from the date of termination.

- **Front pay**: may be awarded in certain cases. It is available when reinstallation is not possible.

- **Compensatory Damages:** are allowed for future loss, emotional distress, pain & suffering, inconvenience, mental anguish & loss of enjoyment of life.

## <u>UNDER PUERTO RICO CIVIL CODE ART 1802</u>

82.  Any and all damages claimed by Plaintiff here are exclusively due to Plaintiff for the negligent acts of the defendants in a sum of not less than one million dollars ($1,000,000.00).

## REQUEST FOR JURY TRIAL

Plaintiff's request trial by jury as granted by applicable statues.

## PRAYER

**WHEREFORE**, Plaintiff pray for judgment against Defendants and grant each of them as follows:

- Grant Plaintiff Attorney's Fees and costs it incurs in pursuing this action against Defendants; and

- Grant Plaintiff Liquidated damages; and

- Grant Plaintiff an Injunctive relief; and

- Grant Plaintiff Punitive Damages for Defendant's willful violations of statutes; and

- Grant Plaintiff Compensatory Damages; and

- Grant Plaintiff request for Jury Trial; and

- Grant any additional relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 15th day of April, 2011.

**RODRIGUEZ-GARCIA, P.S.C.**
P.O. Box 192831
San Juan, P.R. 00919-2831
Tel.   (787) 526-6203
          (787) 942-6762
Fax    (787) 200-4141
crgpsc@gmail.com

/s/**CARLOS RODRIGUEZ GARCIA**
USDC-PR 128309